UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                             Criminal Case No. 12-20218

David Lamont Holland,                Sean F. Cox
                                                     United States District Court Judge

    Defendant.
_____/

**<u>OPINION & ORDER</u>**
**<u>DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE</u>**

In this criminal action, Defendant David Lamont Holland ("Defendant") was convicted of robbery and firearm offenses and was sentenced to 240 months of imprisonment. The matter is before the Court on Defendant's *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), which is based upon concerns about the ongoing novel coronavirus pandemic ("COVID-19"). This motion asks the Court to allow Defendant to serve the remainder of his sentence at home because he is concerned that he could contract the virus, and that he may be vulnerable to severe illness if he were to contract it. The Court concludes that a hearing is not warranted and orders that the motion will be decided based upon the briefs. As explained below, the Court shall DENY the motion.

**BACKGROUND**

In this criminal case, Defendant pleaded guilty to two counts of Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. § 1951, and two counts of Using or Carrying a Firearm During a Federal Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

This Court sentenced Defendant to a total term of 240 months of imprisonment. Before

doing so, this Court discussed the § 3553 factors on the record:

> I've considered the nature and circumstances of the offense.
> You were involved with a gang of robbers who were engaged in violent robberies in the Detroit Metropolitan Area, as well as in Warren, Ohio.
> You were involved with a gang of individuals who threatened innocent bystanders, innocent employees of the different cellular stores, put them in fear of their lives, and there's a mention about victims, and the individuals you robbed from.
> Those individuals will never get over what happened to them. They will have nightmares. Their relationships with their families will have been damaged because of what you and your fellow robbers were doing. I want you to just think about it. And I know the members of your family are in the courtroom. Just think about the terror that these individuals, these young men and women went through when you went into those stores, waving those guns, pointing those guns at them. And when some of them were laying there on the floor, they were wondering if they were ever going to get out of that store and see their families again.
> And that will live with them for the rest of their lives. That terror that you put them through, and your friends put them through, will never go away from those poor innocent people that you stole these stupid cell phones from.
> I'm sure you're filled with regret from what you've done, but you know what, what you did goes on day after day in these poor people's lives, these young people's lives, these young women that we heard from during the course of the trial, what they went through. So it's a very, very serious crime.
> On December 1, 2012, you and Dismukes entered a RadioShack on Eight Mile Road and robbed the employees of the cellular store of telephones and currency. During the course of that robbery, you and Holland (sic) both had semi-automatic pistols, which you pointed at the employees, ordering them into the back of the store.
> Of course, they're wondering whether -- again, whether they're ever going to leave that store alive. And you and Dismukes fled the store, stealing approximately 72 cellular phones worth approximately $43,000.
> And again, on September 7, 2012, you and Dismukes entered the T-Mobile store located on Grand River, and again robbed the employees of cellular telephones and their own personal money. Again, Dismukes was pointing a semi-automatic pistol at the employees while demanding the phones. You went in there and you gathered the telephones, but them into the bags and again you stole 70 telephones worth approximately $31,000.
> And we know, not only were you pointing guns at these poor people, in one instance, these poor employees, you also punched one of these employees during the course of one of these robberies. What did the individual do, not react quick enough?
> Again, the nature and circumstances of these offenses, the four robberies that you were involved in are very, very, very serious.

2

And really, you perpetrated violence on innocent people. There's no excuse for that and no justification.

I've considered your history and your characteristics. I mean, you're 20 years old. And it's difficult for me to put a 20-year-old in -- send them to jail for a long period of time, for a big chunk of their youth is gone. But I really don't have any option, because I view you as a continued threat to society.

You engaged in very, very violent activities that hurt people. I note that your -- you grew up in a poor family. I know that your mother did the best that she could for you. I know you have a lot of support from your family. I know you suffer from depression and problems sleeping. I know that you have struggled with your education. You have an eleventh-grade education.

I know that you have been diagnosed as easily-influenced and as an individual that makes poor decisions. I'm aware of your IQ. I'm aware of the issue regarding being cognitively impaired. But the fact that you make poor decisions and are easily influenced, poses a threat to society, because people can get -- manipulate you to do what they want you to do, especially involving guns and acts of violence.

And what really -- I wonder, with this series of robberies, I'm really surprised that no one was seriously hurt, or shot or killed, which is probably very fortunate for all the individuals who were part of this gang.

On the positive side, you have a good employment record. You have worked as a janitor.

So I've considered your history and your characteristics. I've considered the need for the sentence imposed to reflect the seriousness of the offense, and it is a very serious offense, to promote respect for the law and provide just punishment for what you did, to afford adequate deterrence from criminal conduct and to protect the public from further crimes by you.

I view you as a threat to society. I view you as a threat to society when you get out of prison.

And again, Mr. Chadwell was correct, these crimes that I sat through the trial, the crimes of this gang escalated in terms of what they were doing and the threat that they posed to the public.

And you were a part of it. You were an intimate part of it. You were one of the people going in, using the gun to rob these innocent people.

I've considered the need to provide you with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

I've considered the kinds of sentences available. The max on Counts Nine and Ten were 20 years. The guidelines on Nine and Ten were 33 to 41 months. Probation is not an option. Count Ten is the mandatory minimum of seven to life, which is -- would be consecutive to Count Nine. Count Eleven-- Count Twelve is 25 to life, consecutive to all the other counts.

So I have considered the kinds of sentences available, as well as the sentencing range. I did grant the 5K motion. I'm not going to grant the variance,

3

> because the sentence I end up giving him will be sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. Section 3553(a).
>
> I have reviewed, as I started off during the -- I started off mentioning during the hearing, I reviewed the different plea agreements with all the other co-defendants. And again, I view your activities, your culpability in the same category as Dismukes' and Foster's.
>
> So I have considered all the factors under 18 U.S.C. Section 3553(a), in imposing this sentence that I'm going to impose upon you right now.

(ECF No. 339, Sentencing Transcript, at 25-30).

Defendant began serving his sentence on February 12, 2014.

On November 6, 2020, Defendant filed his *pro se* Motion for Compassionate Release. (ECF No. 535).

Defendant is now twenty-seven years old. He is currently housed at Tucson USP and has a projected release date of November 22, 2030. Defendant filed his Motion for Compassionate Release asserting that he is heightened risk of more serious illness, if he were to contract COVID-19, because of his weight and his asthma.

The Government waives the exhaustion requirement and asks the Court to consider Defendant's motion on the merits. (Govt.'s Br. at 17). It concedes that Defendant suffers medical conditions that are established to place him at increased risk of severe illness from the virus, if he were to contract it. Nevertheless, the Government contends the motion should be denied based upon a consideration of the § 3553(a) factors.

## ANALYSIS

"The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances. 18 U.S.C. § 3582(c)(1)(A)." *United States v. Michael Jones*, 980 F.3d 1098, 1100 (6th Cir. Nov. 20, 2020).

"The passage of the First Step Act in 2018 expanded access to compassionate release by allowing inmates to bring compassionate-release motions on their own behalf." *United States v. Elias*, __ F.3d. __, 2021 WL 50169 at *1 (Jan. 6, 2021).

"An imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request – whichever is earlier." *Jones, supra,* at 1106. Here, the Government has waived the exhaustion requirement and, therefore, this Court may consider Defendant's motion.

The United States Court of Appeals for the Sixth Circuit has held that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry:

> Before granting a compassionate-release motion, a district court must engage in a "three-step inquiry:" the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and "consider[] all relevant sentencing factors listed in 18 U.S.C. §3553(a)." *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A)). If each of those requirements are met, the district court "may reduce the term of imprisonment," but need not do so. 18 U.S.C.§3582(c)(1)(A).

*Elias, supra,* at * 1.

At step one, a court must find whether "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1(A)(I).

"At step two, a court must 'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Jones, supra,* at 1108. (quoting 3582(c)(1)(A)) (emphasis added). But the Sixth Circuit has held "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias, supra*, at *2.

5

"And, in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* That means that, "[u]ntil the Sentencing Commission updates § 1B.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones, supra*, at 1109. Because Defendant's compassionate release motion was filed by an incarcerated person, this Court "may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement in § 1B1.13." *Jones, supra*.

"At step three, '§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Jones, supra,* at 1109.

The Sixth Circuit has explained that, "in *granting* a compassionate-release motion, district courts must address all three steps." *Elias, supra*, at *2 (emphasis added). But it has also clarified that "district courts may *deny* compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Id*. (emphasis added).

Here, Defendant contends that his request for compassionate release should be granted because his weight and asthma, in light of the ongoing pandemic, constitute extraordinary and compelling circumstances.

This Court agrees with other courts that have concluded that the COVID-19 pandemic

6

alone does not justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility ..., whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Here, Defendant asserts that he is heightened risk of more serious illness, if he were to contract COVID-19, because of his weight and his asthma. The Government concedes that Defendant suffers medical conditions that are established to place him at increased risk of severe illness from the virus, if he were to contract it.

Nevertheless, this Court concludes that consideration of the § 3553(a) factors weighs against granting compassionate release in this particular case. *United States v. Ruffin,* 978 F.3d 1000, 1008 (6th Cir. Oct. 26, 2020) ("Even when extraordinary and compelling reasons exist, the statute leaves district courts with discretion to deny relief under a balancing of the sentencing factors in 18 U.S.C. § 3553(a).").

The nature and circumstances of Defendant's offenses *weigh strongly* against his release. Defendant engaged in armed robberies of retail stores, during which innocent individuals were put in fear of losing their lives. During one of the robberies, Defendant punched an individual in the face. These are very serious and troubling offenses.

This Court is aware that, prior to being sentenced, Defendant was diagnosed as being

easily-influenced and as an individual that makes poor decisions. The medical records from the Bureau of Prisons also indicate that Defendant has been diagnosed with Antisocial Personality Disorder. All of this leads this Court to conclude that Defendant makes poor decisions and is easily influenced by others individuals, like Defendant's Co-Defendants in this case, which poses a real threat to society.

And the convictions in this case were not an isolated event. Despite his young age, Defendant has a criminal history, which includes violence.

During his incarceration, Defendant has received multiple institutional violations for violent and other inappropriate conduct. He has been disciplined for fighting, threatening others, possession of drugs or alcohol, destroying prison property, refusing to obey orders, and engaging in sexual acts in the presence of staff. (*See* Govt.'s. Ex. G).

This Court does not believe that releasing Defendant nearly a decade early would promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from further crimes of Defendant. In sum, this Court finds that Defendant is not an appropriate candidate for the extraordinary remedy of compassionate release.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

                                              s/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated: February 17, 2021